IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

DAVID SILVER,

       Plaintiffs,

vs.                                Case Number:  1:11-cv-00256 LFG-KBM

DENNIS R. GLASS, WILLIAM J. AVERY,
DENNIS L. SCHOFF, PATRICK S. PITTARD,
ISAIAH TIDWELL, DAVID A. STONECIPHER,
WILLIAM PORTER PAYNE, ERIC G. JOHNSON,
M. LEANNE LACHMAN, WILLIAM H. CUNNINGHAM,
GEORGE W. HENDERSON III, MICHAEL F. MEE,
MARCIA J. AVEDON, J. PATRICK BARRETT
and JAMES S. TURLEY,

       Defendants.

**MOTION TO DISMISS AMENDED COMPLAINT
FILED BY DEFENDANTS DENNIS R. GLASS, WILLIAM J. AVERY,
DENNIS L. SCHOFF, PATRICK S. PITTARD, ISAIAH TIDWELL, DAVID A.
STONECIPHER, WILLIAM PORTER PAYNE, ERIC G. JOHNSON, M.
LEANNE LACHMAN, WILLIAM H. CUNNINGHAM, GEORGE W. HENDERSON III,
<u>MICHAEL F. MEE, MARCIA J. AVEDON AND J. PATRICK BARRETT</u>**

       Defendants Dennis R. Glass, William J. Avery, Dennis L. Schoff, Patrick S. Pittard,

Isaiah Tidwell, David A. Stonecipher, William Porter Payne, Eric G. Johnson, M. Leanne

Lachman, William H. Cunningham, George W. Henderson III, Michael F. Mee, Marcia J.

Avedon, and J. Patrick Barrett, pursuant to Federal Rule of Civil Procedure 12(b)(6), move to

dismiss Plaintiff's Amended Complaint.

**<u>SUMMARY OF ARGUMENT</u>**

       This Court should dismiss Plaintiff David Silver's Amended Complaint for failure to

state a claim upon which relief may be granted.  Silver's claims are based on a single implausible

premise:  He alleges that the fourteen defendants – directors and officers of Lincoln National

Corporation ("Lincoln National") – authorized the use of a "forged" judgment docket to enforce

writs of garnishment against Silver's assets.  Aside from being wholly devoid of the type of factual allegations necessary to survive *Iqbal*, this conspiracy theory must fail for a more fundamental reason:  Silver has ***already litigated*** the validity of the "forged" document, and Chief Judge Black has ***already determined*** that it was validly issued from this Court.  Silver's attempt to re-litigate the issue is frivolous and constitutes abusive litigation.  His complaint should be dismissed for at least three reasons.

*First*, all of Silver's claims are premised on the threshold question of whether the document Lincoln National used to enforce writs of garnishment was a forgery, and Chief Judge Black has already determined that it was valid.  As the Amended Complaint acknowledges, this dispute arises from a valid $24 million judgment secured by Lincoln National against Silver in Illinois in 1996.  In an attempt to enforce that judgment in 2008, Lincoln National moved this Court for writs of garnishment to serve against Silver's assets.  Silver vigorously opposed this process, arguing *inter alia* that a specific "judgment docket" – an administrative document from this Court verifying the earlier Illinois judgment – was invalid and contained numerous flaws. After considering the briefing and hearing testimony, the Court repeatedly rejected Silver's arguments as to the validity of the judgment docket, including by a written order dated July 2, 2010.  Undeterred, Silver now brings this new lawsuit claiming that the ***same*** judgment docket was invalid.

Silver's claims are thus barred by the doctrine of collateral estoppel, which prevents re-litigation of issues previously resolved.  The doctrine provides a permissible basis for a Rule 12(b)(6) dismissal where its applicability is clear from the court records in a previous case.  *See Amphibious Partners, LLC v. Redman*, 534 F.3d 1357, 1361-62 (10th Cir. 2008).  In his Amended Complaint, Silver appears to be alleging independent claims of fraud, forgery,

defamation, and intentional and negligent infliction of emotional distress—all arising out of the Defendants' claimed authorization of the "forged" document. Because Chief Judge Black already has determined the validity of the document in previous litigation, collateral estoppel requires dismissal of the Amended Complaint in its entirety.

*Second*, even if the underlying issue had not been fully litigated and resolved, Silver has failed to allege an actionable claim. In order to survive a motion to dismiss, a plaintiff must plead facts that not merely are conceivable, but actually are "***plausible***" on their face.[1] *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. 1937, 1949 (2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has . . . not shown that the pleader is entitled to relief." *Id*. at 1950 (internal punctuation omitted). The Amended Complaint offers only Silver's rank speculation that some unspecified "person or persons who ***may*** have been known" to the defendants "***appears***" to have forged the document. [Doc. 5 ¶ 20]. It lacks any specific allegations as to the who, what, where, or when of the "forgery," and Silver wholly fails to explain why any person would have a motive to forge an ***administrative document*** verifying an underlying judgment that itself was valid and enforceable. *Iqbal* requires the dismissal of this type of implausible complaint based on "naked assertions devoid of further factual enhancement." *Iqbal*, 129 S.Ct. at 1949 (internal punctuation omitted).

*Third*, each of the individual claims fails for a variety of additional reasons. With regard to fraud, Silver pleads no facts – let alone with particularity – establishing that any defendant made any fraudulent statement. His claim of forgery must be dismissed because forgery is not a civil cause of action. He fails to plead a defamation claim because he does not identify a single defamatory communication and any communication would be absolutely privileged. His claim for intentional infliction of emotional distress fails because he does not identify any specific

---

[1] All emphasis added unless otherwise noted.

extreme or outrageous conduct by any defendant.  The final negligent infliction of emotional

distress claim also fails because recovery is limited to bystanders who witness sudden and

serious injury to a family member.  For these and all the reasons discussed below, the Court

should dismiss the Amended Complaint with prejudice.

## BACKGROUND[2]

### A.      Lincoln National Sought to Enforce a Valid Illinois Judgment against Plaintiff Silver in this Court

In 1996, Lincoln National obtained a $24,173,864.98 judgment against Silver in Illinois

federal court based on Silver's civil RICO violations, securities and common law fraud and

breach of fiduciary duty in connection with his management of two venture-capital funds.  *See*

[Doc. 5 ¶¶ 23 & 26]; *see generally Lincoln Nat'l Life Ins. Co. v. Silver*, 966 F. Supp. 587 (N.D.

Ill. 1995).[3]   Lincoln registered the judgment with this Court in 1997, and over Silver's

objections, successfully revived it in 2004.  *See* [Doc. 5 ¶¶ 27-29].[4]   Judge Black personally

signed the order reviving the judgment on October 21, 2004.[5]   Subsequently, Lincoln obtained a

"judgment docket" verification from this Court dated November 14, 2007 that confirms the

existence of the earlier Illinois judgment.[6]   Lincoln submitted the 2007 judgment docket as part

of its application to obtain writs of garnishment against Mr. Silver's assets from this Court in

---

[2] The history underlying the Amended Complaint is set forth in detail in this Court's records in *Lincoln Nat'l Life Ins. Co. v. Silver et al.*, No. 08mc0015-BB (D.N.M.), including specifically the July 2, 2010 Memorandum Opinion and Order of Judge Black [Doc. 203]  In ruling on a Rule 12(b)(6) motion to dismiss, a court may consider matters admissible by judicial notice.  *See Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010).  Accordingly, Judge Black's July 2, 2010 order and other relevant pleadings are attached to Defendants' Request for Judicial Notice in Support of Motion to Dismiss Amended Complaint (the "Judicial Notice Motion").

[3] *See also* Judicial Notice Motion, Ex. A [Doc. 203] (Order of July 2, 2010) at 2.

[4] *Id.*

[5] *Id.* at 3, fn 2.

[6] *Id.* at 3.  Silver does not attach a copy of the challenged judgment docket to his complaint.  This document is central to Mr. Silver's claim that the judgment is fraudulent, and the Court may thus consider it on a motion to dismiss.  *See GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997).  A copy of the judgment docket is attached as Exhibit B to the Judicial Notice Motion.

2008.  *See generally Lincoln Nat'l Life Ins. Co. v. A. David Silver et al.*, No. 08mc0015-BB (D.N.M.).

**B.    Silver Opposed the Enforcement Action and Aggressively Litigated the Validity of the 2007 Judgment Docket**

Silver extensively litigated the issuance of writs of garnishment against him before this Court from 2008 through 2010.  Among other arguments, he specifically challenged the validity of the judgment docket dated November 14, 2007.  Beginning in his July 31, 2008 motion, Silver argued that the document was invalid because:

> ***It is defaced.***  It refers to the Illinois judgment as having been entered on "April 10, 2007," which is fallacious.  It is thus ***not a "correct copy"*** as required by Fed. R. Civ. Pro [sic] Rule 79(b).  It ***lacks a file number*** as required by Fed. R. Civ. Pro. [sic] Rule 79(a).  It ***does not appear in the civil docket***, in violation of Rule 79(a) . . . .[7]

At a subsequent August 13, 2008 hearing, Silver continued to attack the validity of the judgment docket:

> There is what I call a ***defaced copy***.  It has a typo in it.  It does not have a file number stamped on it.  It was not filed forthwith after your order.  The judgment must be filed forthwith or it is not a judgment.  Your order was -- this judgment that Rodey showed me is three years and 24 days after your order.  ***The signature is illegible.  The seal is smudged.  It couldn't possibly be called a correct copy.***  It doesn't have a file, a chronological file. . . . You said you had in front of you a November 14, 2007 judgment.  And I say it is not a correct copy.[8]

Judge Black specifically rejected these arguments:  He observed that the seal on the document "looks good to [him]," confirmed that "the judgments are . . . in the court file," and ruled against Silver's various motions.[9]

Undeterred, Silver reiterated his complaints about the 2007 judgment docket's alleged invalidity by filing another motion on August 26, 2008.[10]  The Court denied the motion in its

---

[7] Judicial Notice Motion, Ex. C [Doc. 97], July 31, 2008 Supplemental Br. of David Silver, at 3.
[8] Judicial Notice Motion, Ex. D, August 13, 2008 Hr'g Tr., at 7.
[9] *Id.* at 7, 16, 19.  *See also* Judicial Notice Motion, Ex. E [Doc. 108], August 13, 2008 Order Denying Silver's Mot. to Dismiss Writ of Garnishment on Northern Hills, Inc. *et al.*

comprehensive July 2, 2010 written order.  In particular, Judge Black recognized that "[i]n 2007, Lincoln National *obtained* a second 'Judgment Docket' verification again noting the existence of the $24,173.864 [sic] judgment that had previously been registered in this District."[11]  While Judge Black noted that "the document unfortunately contains a typographical error stating that the date of the original document was '4/10/07' instead of '4/10/96,'" he gave no credence to Silver's argument that the judgment docket was invalid due to its alleged flaws.[12]

### C.  After Judge Black Determined that the Judgment Docket Is Valid, Silver Brings this New Lawsuit Claiming the *Same Document* Is a Forgery

Silver now brings the Amended Complaint against current and former Lincoln National officers and directors, again alleging that the 2007 judgment docket is invalid.  *See* [Doc. 5 ¶¶ 20, 21, & 37].  While Silver now characterizes the problem as one of "forgery," [*id.* ¶¶ 20 & 35], his factual allegations (*i.e.*, his evidence of forgery) are identical to those previously considered and rejected by Judge Black.  The Amended Complaint again alleges:

> b.  The November 14, 2007 judgment cannot be considered a "correct copy," as required by Fed. R. Civ. Pro. [sic] 79(b), because of an *error on its face* as to the date of the Illinois judgment, i.e., April 10, 2007.

> c.  The November 14, 2007 judgment lacks a consecutive file number -- it *has no file number*, consecutive or otherwise -- as required by Fed. R. Civ. Pro. [sic] 79(a).

> d.  It is *not in the civil docket*, in violation of Fed. R. Pro. [sic] 79(a) [sic].

*See* [*id.* ¶ 37].  Based on these and other previously-alleged flaws in the document, Silver then speculates that "a person or persons who *may* have been known" to the defendants "*appears*" to have forged the document.  *See* [*id.* ¶ 20].  He offers no specific factual allegations about who committed the forgery or for what possible purpose.  Nonetheless, while not clearly identified in

---

[10] Judicial Notice Motion, Ex. F [Doc. 119], August 26, 2008 Mot. to Certify Order in Multiple Claim Case, at 3-4, 5-8.

[11] Judicial Notice Motion, Ex. A [Doc. 203], Order of July 2, 2010, at 3.

[12] *Id.*

the Amended Complaint, Silver apparently seeks to assert independent claims of forgery, fraud, defamation, and intentional and negligent infliction of emotional distress against the Lincoln National defendants, and seeks in excess of $50,000,000 (notably more than double the Lincoln National's unpaid judgment against him) in general damages in addition to special and punitive damages and costs.  *See* [*id.* ¶ 63].

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead enough facts "to 'state a claim to relief that is *plausible* on its face.'"  *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (1955)).  "The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully," and instead demands that the plaintiff put forth sufficient factual allegations to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*  Neither do "naked assertions devoid of further factual enhancement."  *Id.* (internal alterations and quotation marks omitted).  The court must "draw on its judicial experience and common sense" in reviewing the allegations, and if the facts alleged "do not permit the court to infer more than the mere possibility of misconduct," the claim must be dismissed.  *Id.* at 1950.  In sum, "the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims."  *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in original).

The fact that a plaintiff proceeds *pro se* "does not relieve [him] of the burden of alleging sufficient facts on which a recognized legal claim could be based."  *Hall v. Bellmon*, 935 F.2d

1106, 1110 (10th Cir. 1991); *see also id.* ("[W]e do not believe it is the proper function of the district court to assume the role of advocate for the pro se litigant."). Regardless of the plaintiff's *pro se* status, the court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Smith v. U.S.*, 561 F.3d 1090, 1096 (10th Cir. 2009) (citation omitted); *see also Hall*, 935 F.2d at 1110 ("a pro se plaintiff requires no special legal training to recount the facts surrounding his alleged injury, and he must provide such facts if the court is to determine whether he makes out a claim on which relief can be granted.").

In ruling on a Rule 12(b)(6) motion, "facts subject to judicial notice may be considered without converting a motion to dismiss into a motion for summary judgment." *Grynberg v. Koch Gateway Pipeline Co.*, 390 F.3d 1276, 1278 n.1 (10th Cir. 2004) (citation omitted). The court may "take judicial notice of publicly-filed records in our court and certain other courts concerning matters that bear directly upon the disposition of the case at hand." *United States v. Ahidley*, 486 F.3d 1184, 1194 (10th Cir. 2007); *see St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) ("Judicial notice is particularly applicable to the court's own records of prior litigation closely related to the case before it"). Because of this ability to take judicial notice of prior judicial records, the doctrine of *res judicata* is a permissible basis for a Rule 12(b)(6) motion to dismiss. *See Merswin v. Williams Companies, Inc.*, 364 Fed. Appx. 438, 441 (10th Cir. 2010) (affirming a Rule 12(b)(6) res judicata dismissal and noting that the court may take judicial notice of related records); *Amphibious Partners, LLC v. Redman*, 534 F.3d 1357, 1361-62 (10th Cir. 2008).

<u>ARGUMENT</u>

**I.     ALL OF SILVER'S CLAIMS ARE BARRED BY COLLATERAL ESTOPPEL**

Each of the claims in the Amended Complaint is fundamentally premised on the alleged invalidity of the November 14, 2007 judgment docket used to secure writs of garnishment against Silver.  *See* [Doc. 5 ¶ 38].   Because Judge Black already has determined that the document was valid, collateral estoppel denies Silver a "second bite at the apple" and requires dismissal of the Amended Complaint.[13]  *See In re Corey*, 583 F.3d 1249, 1251 (10th Cir. 2009).

Collateral estoppel or issue preclusion, a form of *res judicata*, "bars a party from relitigating an issue once it has suffered an adverse determination on the issue, even if the issue arises when the party is pursuing or defending against a different claim."  *Park Lake Res. Ltd. Liab. v. U.S. Dep't of Agric.*, 378 F.3d 1132, 1136 (10th Cir. 2004).   Courts have "broad discretion" in applying collateral estoppel.  *Meredith v. Beech Aircraft Corp.*, 18 F.3d 890, 894-95 (10th Cir. 1994).  In the Tenth Circuit:

> application of collateral estoppel requires: (1) the issue previously decided is identical with the one presented in the action in question, (2) the prior action has been finally adjudicated on the merits, (3) the party against whom the doctrine is invoked was a party, or in privity with a party, to the prior adjudication, and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action.

*Dodge v. Cotter Corp.*, 203 F.3d 1190, 1198 (10th Cir. 2000).

All four elements of collateral estoppel are satisfied here.  ***First***, there is an identity of issues with previous litigation.[14]  During the litigation before this Court between 2008 and 2010

---

[13] The Defendants have contemporaneously filed a motion pursuant to Federal Rule of Civil Procedure 42(a) to consolidate this matter with the open case of *Lincoln Nat'l Life Ins. Co. v. A. David Silver et al.*, No. 08mc0015-BB (D.N.M.).

[14] This identity-of-issues element is established where there is a underlying "substantive identity between the pertinent issues in the two proceedings."  *See In re Tague*, 137 B.R. 495, 503 (Bankr. D. Colo. 1991) (noting that identity of issues does not require identity "in the precise terms in which the issues or the parties' claims are described").

to enforce Lincoln National's writs of garnishment (the "Garnishment Litigation"), Silver

expressly argued that the November 14, 2007 judgment docket was invalid because, *inter alia*, it

was "defaced," "does not appear in the civil docket," and "couldn't possibly be called a correct

copy[.]"[15]  His Amended Complaint is premised on the exact same allegations regarding the

exact same document.  *See* [Doc. 5 ¶ 37].  The fact that Silver now asserts new causes of action

based on these allegations "is of no importance."  *See Matosantos Commercial Corp. v.

Applebee's Int'l, Inc.*, 245 F.3d 1203, 1208 (10th Cir. 2001) (finding a litigant's new causes of

action barred by previous litigation).  Because "the new claims are based on the underlying issue

already decided by [the Garnishment Litigation]" – *i.e.*, the validity of the November 14, 2007

judgment docket – the identity of issues is established.  *See id.*; *Allen v. McCurry*, 449 U.S. 90,

94 (1980) (under collateral estoppel, a prior decision "may preclude relitigation of the issue in a

suit on a different cause of action").  Silver cannot avoid preclusion by recasting the attacks on

the judgment docket as now attributable to undefined "fraud" or "forgery."[16]  *See Matosantos*,

245 F.3d at 1208.

> ***Second***, the issue of the validity of the judgment docket has been finally adjudicated on

the merits in Garnishment Litigation.  After Silver presented the Court with his arguments

regarding flaws in the 2007 document, Judge Black observed that the seal on the document

"looks good to [him]," confirmed that "the judgments are . . . in the court file," and ruled against

---

[15] *See* Judicial Notice Motion, Ex. C [Doc. 97], July 31, 2008 Supplemental Br. of David Silver, at 3; Judicial Notice Motion, Ex. D, August 13, 2008 Hr'g Tr. at 7.

[16] Even if Mr. Silver's fraud allegations could be construed as a new claim, it is one that he *could* have asserted in his prior litigation against Lincoln, and it would thus still be barred by *res judicata*.  *See Clark v. Haas Group, Inc.*, 953 F.2d 1235, 1238 (10th Cir. 1992) (*res judicata* "precludes the parties or their privies from relitigating issues that were ***or could have*** been raised").

Silver's various motions.[17]  Two years later, Judge Black ultimately refused to dismiss or quash

the writs of garnishment, and expressly found that Lincoln had previously "obtained" the

November 14, 2007 judgment docket in 2007.  ***Third***, Silver was plainly a party to the

Garnishment Litigation, satisfying the third element.  ***Fourth***, Silver not only had a "full and fair

opportunity to litigate the issue" of the judgment's validity during the Garnishment Litigation,

but he in fact aggressively litigated this issue repeatedly and at length.  *See supra* at 5-6.

Because all elements of collateral estoppel are met, and because all of Silver's claims are

premised on an issue that he has previously litigated and lost, all of his claims are barred.  The

doctrine of collateral estoppel is "designed to prevent needless relitigation and bring about some

finality to the litigation."  *Moss v. Kopp*, 559 F.3d 1155, 1161 (10th Cir. 2009).  The Amended

Complaint represents precisely this type of "needless relitigation" and should be dismissed.

## II.   NONE OF SILVER'S CLAIMS MEET *IQBAL'S* THRESHOLD "PLAUSIBILITY" REQUIREMENT

According to the Supreme Court in *Iqbal*, a plaintiff must allege factual allegations that

push his claims from merely conceivable to reasonably "plausible."  *See Iqbal*, 129 S.Ct. at 1949.

The Amended Complaint should be dismissed for the separate and independent reason that Silver

has failed to state a claim because his forgery theory is implausible.

***First***, Silver offers no factual allegations about who forged the document, when it was

forged, or under whose direction.  *See* [Doc. 5 ¶ 20].  Silver does not even allege that any of the

defendants were involved but, rather, asserts that they must have "approved" the forgery after he

sent them his "evidence," *i.e.*, the same evidence of invalidity that Judge Black considered and

rejected.  *See id*.  Nothing in the Amended Complaint suggests "the reasonable inference" that

---

[17] Judicial Notice Motion, Ex. D, August 13, 2008 Hr'g Tr., at 7, 16, 19.  *See also* Judicial Notice Motion, Ex. E [Doc. 108], August 13, 2008 Order Denying Mr. Silver's Mot. to Dismiss Writ of Garnishment on Northern Hills, Inc. et al.

11

any of the defendants, let alone all of them, are "liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1950. And despite litigating this issue for years, Silver has failed to show any "affirmative indication that his version of the relevant events is not fanciful." *Conaway v. Smith*, 853 F.2d 789, 794 (10th Cir. 1988).

*Second*, Silver offers no plausible motive for the alleged forgery. A judgment docket is an *administrative document* that verifies the existence of a previous judgment. Here, Silver does not dispute that there is a $24 million judgment against him that was domesticated in this Court, and he acknowledges that Judge Black himself granted Lincoln National's motion to revive that judgment in 2004. *See* [Doc. 5 ¶¶ 26-28]. There simply is no conceivable reason that any person would forge an administrative document to verify a valid judgment. As a result, this Court should "draw on its judicial experience and common sense" and dismiss the frivolous Amended Complaint as implausible. *See Iqbal*, 129 S.Ct. at 1949.

## III.   EACH OF SILVER'S CLAIMS SUFFERS FROM INDEPENDENT LEGAL FLAWS

### A.   The Forgery Claim Fails Because It Is Not a Civil Cause of Action

Any claim that defendants forged a public document with intent to defraud him fails because forgery is a criminal offense and not a civil cause of action. *See* NMSA 1978, § 30-16-10 (specifying the elements for the criminal offense of forgery); *see generally Luckett v. Bure*, 290 F.3d 493, 497 (2d Cir. 2002) ("We affirm the district court's dismissal of [plaintiff's] claims of sabotage, forgery, and perjury, which are crimes and therefore do not give rise to civil causes of action."). "[A] private citizen, has no standing to initiate federal criminal prosecutions." *Keyter v. 535 Members of 110th Cong.*, 277 Fed. Appx. 825, 827 (10th Cir. 2008); *see also id.* ("The law is crystal clear: a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another.") (citation and internal quotation marks omitted).

**B.** **The Fraud Claim Fails for Lack of Particularity**

Silver's fraud claim fails because he does not plead the elements of fraud with the required particularity. Under New Mexico law, the elements of a fraud claim include "(1) a misrepresentation of fact, (2) either knowledge of the falsity of the representation or recklessness on the part of the party making the misrepresentation, (3) intent to deceive and to induce reliance on the misrepresentation, and (4) detrimental reliance on the misrepresentation." *Williams v. Stewart*, 2005-NMCA-061, ¶ 34, 137 N.M. 420, 112 P.3d 281. The heightened standard of Federal Rule of Civil Procedure 9(b) requires a plaintiff bringing a state law fraud claim to plead the circumstances constituting fraud "with particularity."[18] In the Tenth Circuit, particularity means that the complaint must "set forth the time, place and contents of the false representation, the identity of the party making the false statements, and the consequences thereof." *Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1236 (10th Cir. 2000) (citation omitted).

Here, Silver fails to allege that ***any*** factual statements were made to him by any of the defendants, let alone provide any of the required details as to the time, place, and contents of the statement or an explanation of why it was false. *See* [Doc. 5 ¶¶ 45-48]. This omission and the general vagueness of his allegations are fatal to his claim. *See Schmitz v. Smentowski*, 109 N.M. 386, 399, 785 P.2d 726, 739 (1990) ("A fundamental element of fraud is a misrepresentation of fact . . . . On the facts presented, it is apparent that [defendant] did not misrepresent facts to [the plaintiff] . . . and a cause of action in fraud would not lie.") (internal citation omitted).

---

[18] Because particularity is a procedural rule, *pro se* plaintiffs are obligated to comply with its requirements. *See DiCesare v. Stuart*, 12 F.3d 973, 979 (10th Cir. 1993) ("Pro se litigants are subject to the same rules of procedure that govern other litigants.").

**C.      The Defamation Claim Fails Because Distributing Documents In Connection With Writs of Garnishment Is Absolutely Privileged**

The Amended Complaint's defamation claim must be dismissed because Silver fails to plead the necessary elements for defamation, and because any distribution of documents in connection with the writs of garnishment was absolutely privileged.  In New Mexico, "the elements of defamation include (1) a publication by the defendant, (2) of an asserted fact, (3) which is defamatory, (4) communicated to a third person, (5) of and concerning the plaintiff, (6) and proximately causing injury to the plaintiff." *Schwartz v. Am. Coll. of Emergency Physicians*, 215 F.3d 1140, 1144 (10th Cir. 2000).  To be defamatory, "a statement must render the subject contemptible or ridiculous in public estimation, or expose him to public hatred or contempt." *Andrews v. Stallings*, 119 N.M. 478, 488, 892 P.2d 611, 621 (Ct. App. 1995) (citation and internal quotation marks omitted).  Defamation claims present a "significant exception" to the traditional rule that a complaint must be liberally construed on a Rule 12(b)(6) motion.  *See Bushnell Corp. v. ITT Corp.*, 973 F. Supp. 1276, 1287 (D. Kan. 1997); *see also Andrews*, 119 N.M. at 485, 892 P.2d at 618 ("[D]efamation pleading requirements have a tradition of greater factual detail and specificity with regard to most elements of the complaint than might otherwise be true in civil actions") (quotation omitted).

The Amended Complaint fails to identify a single defamatory statement "of an asserted fact" made by a defendant.  Silver merely alleges that the defendants generally "defamed" him and "caused the Santa Fe community . . . to think poorly" of him "by sending Writs of Garnishment . . . and by having various Sheriffs drive up to Plaintiff's front door of his home and enter his office . . . . " *See* [Doc. 5 ¶¶ 50 & 51].  These generalized allegations are insufficient, as he fails to allege that any defendant even participated in the writs-of-garnishment process. *See Bridges v. Lane*, 351 Fed. Appx. 284, 287 (10th Cir. 2009) (affirming dismissal of a complaint

with prejudice where plaintiff "claim[ed] that his reputation has been injured irreparably" but "fail[ed] to link that damage to any specific defamatory statement by any specific defendant."). Moreover, Silver admits to the existence of the underlying Illinois judgment against him, *see* [Doc. 5 ¶¶ 26, 27], which is the only discernable "asserted fact" from the 2007 judgment document or the writs of garnishment. A true statement of fact cannot be defamatory.

Finally, the process of obtaining and serving writs of garnishment is absolutely privileged as a publication made in connection with a judicial proceeding. *See generally Superior Constr., Inc. v. Linnerooth*, 103 N.M. 716, 712 P.2d 1378 (1986).

> It is not absolutely essential, in order to obtain the benefits of absolute privilege, that the language claimed to be defamatory be spoken in open court or contained in a pleading, brief, or affidavit . . . . If the alleged defamatory statement is made to achieve the objects of the litigation, the absolute privilege applies even though the statement is made outside the courtroom and no function of the court or its officers is invoked.

*Romero v. Prince*, 85 N.M. 474, 477, 513 P.2d 717, 720 (Ct. App. 1973) (citations omitted). Thus, in *Linnerooth*, the Supreme Court of New Mexico explained that plaintiffs' publication of a notice of *lis pendens* was "merely a republication of the pleadings filed in the pending judicial proceeding" and held that "it should enjoy the same absolute privilege accorded those proceedings"—"***no matter how malicious or false***" the filing. 103 N.M. at 719-20, 712 P.2d at 1381-82. Similarly, any use of the writs of garnishment or the November 14, 2007 judgment docket in this case would be "merely a republication of the pleadings" filed in Garnishment Litigation and would be absolutely privileged. *See id.* at 719, 712 P.2d at 1381. Thus, the defamation claim must fail.

> **D.     The IIED Claim Fails Because There Is No Allegation of Intentional, Outrageous Conduct by Any Defendant**

Liability for intentional infliction of emotional distress ("IIED") can attach only if a defendant's conduct is "so outrageous in character, and so extreme in degree, as to go beyond all

possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *See Trujillo v. N. Rio Arriba Elec. Co-op, Inc.*, 2002-NMSC-004, ¶ 25, 131 N.M. 607, 41 P.3d 333 (filed 2001) (setting forth IIED elements).  Here, Silver alleges only that the defendants collectively failed to respond to his "evidence" of alleged forgery—the same evidence rejected by Judge Black.  This conduct is neither extreme nor outrageous.  Moreover, even assuming the Lincoln National's efforts to enforce the valid judgment could somehow be attributed to the individual defendants, an "actor is *never* liable . . . where he has done no more than to insist upon his legal rights in a permissible way, even though he is well aware that such insistence is certain to cause emotional distress."  Restatement (Second) of Torts § 46 cmt. g (1965).

> **E.**     **The Negligent Infliction of Emotional Distress Claim Fails Because the Tort is Narrow and Inapplicable**

Finally, Silver's claim for negligent infliction of emotional distress must be dismissed because under New Mexico law, "[r]ecovery for negligent infliction of emotional distress (NIED) is limited to situations in which a bystander who [suffers] severe emotional shock as a result of witnessing a sudden, traumatic event that causes serious injury or death to a family member." *Castillo v. City of Las Vegas*, 2008-NMCA-141, ¶ 23, 145 N.M. 205, 195 P.3d 870 (citation and internal quotation marks omitted).  This is plainly not such a case. *See* [Doc. 5 ¶¶ 58, 61].

### CONCLUSION

For the foregoing reasons, the Amended Complaint[19] should be dismissed with prejudice.

---

[19] Plaintiff Silver has transmitted purported Second and Third Amended Complaints to the Defendants within the past week.  However, it does not appear that he has filed either of these purported amendments with the Court, and Silver has not sought the approval of the Court to amend his pleadings as required under Federal Rule of Civil Procedure 15(a).  The Defendants request that this Court dismiss the current Amended Complaint with prejudice against filing any further amendments.

RODEY, DICKASON, SLOAN, AKIN & ROBB, P.A.

By_____/s/ *Andrew G. Schultz*_____.
      Andrew G. Schultz
P. O. Box 1888
Albuquerque, NM 87103
Telephone:   (505) 765-5900
Facsimile:   (505) 768-7395
E-mail:       aschultz@rodey.com

            -and-

KIRKLAND & ELLIS LLP
  Elizabeth L. Deeley
555 California Street
San Francisco, CA 94104
Telephone:   (415) 439-1400
Facsimile:   (415) 439-1500
E-mail:       elizabeth.deeley@kirkland.com

*Attorneys for Defendants Dennis R. Glass, William J. Avery, Dennis L. Schoff, Patrick S. Pittard, Isaiah Tidwell, David A. Stonecipher, William Porter Payne, Eric G. Johnson, M. Leanne Lachman, William H. Cunningham, George W. Henderson III, Michael F. Mee, Marcia J. Avedon, and J. Patrick Barrett*

17

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on April 14, 2011 the foregoing *Motion to Dismiss* was electronically filed with the Clerk of Court using the CM/ECF system that that will send notification of such filing to all counsel of record.

In addition the undersigned hereby certifies that a true copy of the foregoing *Motion to Dismiss* was served by first-class mail to the following:

David Silver                                          Charles R. Peifer
4001 Office Court Drive – Suite 604    Lauren Keefe
Santa Fe, NM 87507                          Peifer, Hanson & Mullins, P.A.
                                                           P.O. Box 25245
                                                           Albuquerque, NM  87125


RODEY, DICKASON, SLOAN, AKIN & ROBB, P.A.

By____*/s/ Andrew G Schultz*_____.
         Andrew G. Schultz