IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**DAVID SILVER**,

    Plaintiff,

vs.                                                                                         No. 11cv0256 BB/KBM

**DENNIS R. GLASS, WILLIAM J. AVERY,
DENNIS L. SCHOFF, PATRICK S. PITTARD,
ISAIAH TIDWELL, DAVID A. STONECIPHER,
WILLIAM PORTER PAYNE, ERIC G. JOHNSON,
M. LEANNE LACHMAN, WILLIAM H. CUNNINGHAM,
GEORGE W. HENDERSON III, MICHAEL F. MEE,
MARCIA J. AVEDON, J. PATRICK BARRETT
and JAMES S. TURLEY,**

    Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on (I) Dennis R. Glass's, William J. Avery's, Dennis L. Schoff's, Patrick S. Pittard's, Isaiah Tidwell's, David A. Stonecipher's, William Porter Payne's, Eric G. Johnson's, M. Leanne Lachman's, William H. Cunningham's, George W. Henderson III's, Michael F. Mee's, Marcia J. Avedon's, and J. Patrick Barrett's *Motion to Dismiss*, filed April 14, 2011 [Doc. 9], their *Request for Judicial Notice*, filed April 14, 2011 [Doc. 10], their *Motion to Strike the Plaintiff's Purported Second and Third Amended Complaints*, filed April 28, 2011 [Doc. 20], and their *Motion to Strike Plaintiff's Purported Fourth Amended and Supplemental Complaint*, filed June 2, 2011 [Doc. 55]; (ii) James S. Turley's *Motion to Dismiss*, filed April 18, 2011 [Doc. 14]; and (iii) pro se Plaintiff David Silver's *Motion to Disqualify Defendant James S. Turley's Attorneys, Peifer, Hanson & Mullins, P.A.*, filed April 22, 2011 [Doc. 18], his *Motion to Disqualify Defendants' Counsel of Record Kirkland & Ellis*, filed May 9, 2011 [Doc. 35], and his

*Motion for Leave to File an Amended Supplemental Complaint*, filed May 13, 2011 [Doc. 43]. The Court will grant the Defendants' motions and deny the Plaintiff's motions.

As a preliminary matter, the Court will grant the request that the Court take judicial notice of other pending proceedings in this Court that involve Silver, the debt he owes to Lincoln National Life Insurance Company, and the documents on which he bases his defenses and assertions in *Lincoln National Life Insurance Co. v. Silver*, No. 08mc15 BB (formerly docketed as No. 97mc3 BB). *See* FED. R. EVID. 201(b), (d); *Grynberg v. Koch Gateway Pipeline Co.*, 390 F.3d 1276, 1279 n.1 (10th Cir. 2004) ("facts subject to judicial notice may be considered without converting a motion to dismiss into a motion for summary judgment"); *United States v. Ahidley*, 486 F.3d 1184, 1192 (10th Cir. 2007) (noting that a court may "take judicial notice of publicly-filed records in our court and certain other courts concerning matters that bear directly upon the disposition of the case at hand"); *St. Louis Baptist Temple, Inc. v. F.D.I.C.*, 605 F.2d 1169, 1172 (10th Cir. 1979) ("Judicial notice is particularly applicable to the court's own records of prior litigation closely related to the case before it.").

**I.    Procedural and factual background.**

This case arises out of the same events and documents associated with case Nos. 08mc15 and 97mc3, in which Lincoln National's attorneys registered in this Court a 1996 federal judgment from the Northern District of Illinois, Eastern Division, and used the resulting transcript of judgment, also titled as a Judgment Docket[1], to apply for and obtain writs of garnishment against Silver's New

---

[1] Part of the difficulty in this case and in 08mc15 is caused by Silver's continuing refusal to distinguish between a "judgment," which is a judicial order declaring the rights of a party and signed by the presiding judge, and a "Judgment Docket," which is simply an administrative transcript that registers a judgment issued by another federal court, thus making it enforceable in the registering district, and that is signed by an employee of the clerk's office. *See, e.g.,* Doc. 10, Ex. 4 at 10-11 (noting that Silver was confusing the transcript with the Illinois judgment itself, and

Mexico assets. *See* Doc. 10, Ex. A at 2. Lincoln National successfully revived the judgment in 2004 and then obtained a second Judgment Docket dated November 14, 2007. *See id.* at 2-3. Silver has vehemently attacked the validity of the November 14, 2007 Judgment Docket in 08mc15, contending in his motion to dismiss writs of garnishment based on that transcript that it is "null and void," "defaced," inaccurate because it contains a "typographical error" in the date of the underlying judgment, and is illegible and untimely. *See* Doc. 10, Ex. C at 3; Ex. D at 7-8; Ex. F at 4. Although the Court has noted that a typographical error does, indeed, exist in the November 14, 2007 Judgment Docket, *see id.* Ex. A at 3, the Court has rejected Silver's arguments that the November 14, 2007 Judgment Docket is invalid and denied his motion to dismiss the writs. *See id.*, Ex. E. The parties are now awaiting a hearing on Silver's Claim of Exemption in that case. *See id.*, Ex. A at 10; *and see* 08mc15, Doc. 210 (vacating hearing because of Silver's improper interlocutory appeal).

After receiving the Court's adverse rulings in 08mc15, Silver filed his original complaint in the case at bar as a diversity action on March 24, 2011 and he filed an amended complaint on April 1, 2011, before any answers or responsive motions were filed. *See* Docs. 1, 5. Fourteen of the

---

explaining that issuing a transcript "is not the issuance of a judgment"). Federal rules that apply to a "judgment" do not apply to a "Judgment Docket." Procedurally, to obtain a Judgment Docket, the original judgment creditor files a certified copy of the original foreign judgment with the clerk's office, along with a prepared Judgment Docket transcript showing that the judgment has been filed with the Court. A clerk's employee compares the proposed Judgment Docket to the certified original foreign judgment, signs it on behalf of the Clerk, and applies the Court's seal to the original. The clerk's office gives the original, signed Judgment Docket transcript with the Court's seal to the creditor that requests it. The Clerk's office then keeps the certified copy of the original foreign judgment bearing the seal of the district court that certified its authenticity and a copy of the signed Judgment Docket in the judgments file. *See* 28 U.S.C. § 1963. Thus, when Silver asserted that no court files existed containing those documents, the Court informed Silver at an August 2008 hearing that the judgments, *i.e.*, the 1996 foreign judgment from Illinois, and this Court's 2004 judgment reviving that judgment, plus the November 14, 2007 Judgment Docket that Silver was challenging, were all in the 97mc3 hard-copy file that the Court was looking at during the hearing. *See* Doc. 10, Ex. 4 at 4, 19.

Defendants are current or former directors and/or officers of Lincoln National Corporation. *See* Am. Compl. at 2-4. Defendant Turley was the CEO of Ernst and Young, which audited Lincoln National at some point. *See id.* at 4. Silver seeks to sue all of the Defendants under state tort law for "forgery of a public document with intent to defraud," fraud, defamation, and intentional and negligent infliction of emotional distress. *Id.* at 1.

## II.     Standards for dismissal for failure to state a cognizable claim.

To withstand a rule 12(b)(6) motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (internal citation omitted). Thus, "the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

If a plaintiff cannot nudge his claims "across the line from conceivable to plausible," the complaint must be dismissed. *Twombly*, 550 U.S. at 570. "Two working principles" are initially applied in resolving a motion to dismiss under this standard. *Iqbal*, 129 S. Ct. at 1949.

> First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . . . Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.

*Id.* at 1949-50 (internal citation omitted). Thus, the Court will initially identify, and then disregard, statements that are nothing more than legal conclusions "not entitled to the assumption of truth" and then the Court will determine whether the factual allegations "plausibly give rise to an entitlement to relief." *Id.* at 1950. Of course, a complaint is implausible if it is based only on "naked assertions devoid of further factual enhancement." *Id.* at 1949 (internal quotation marks and bracket omitted).

**III.    Analysis under Rule 12(b)(6).**

The factual allegations in Silver's Amended Complaint are extremely sparse. Silver generally alleges that "a person or persons who may have been known to and authorized by" unspecified defendants "appears" to have "creat[ed] a forged" November 14, 2007 Judgment Docket by "whit[ing] out" and retyping in new information on a "used judgment document." Am. Compl. at 4, ¶ 20. He complains that this "forged" Judgment Docket was then used in April 2008 to obtain and send out twenty-six writs of garnishment to various institutions. *Id.* at 5, ¶ 22. Silver concludes that unspecified Defendants apparently "found [the forger's] actions acceptable" and must have "approved" the forgery because Silver informed them, by letters and faxes between May and August of 2008[2], (*i.e.*, after the writs of garnishment had been obtained and sent) that the November 14, 2007 Judgment Docket was, in his opinion, forged. *Id.* at 4-5, ¶¶ 21-22.

Silver next focuses on the validity of the Court's October 21, 2004 Order[3] reviving the 1996 Illinois judgment in 97mc3, erroneously concluding that it was not "filed with the Clerk until June,

---

[2] The Court takes judicial notice that Silver previously stated to the Court that he "never saw the November 14, 2007 judgment until it was made an exhibit to Lincoln National's pleading in late June 2008, after the writs of execution were served." Doc. 10, Ex. 4 at 4.

[3] Silver misstates the date of the October 21, 2004 Order as October 24, 2004 despite the existence of the file-stamped Order in the Court's record and in the attachments to various briefs – apparently because there is a typographical error regarding that date in the Court's July 2, 2010 Order, and he is attempting to capitalize on that error.

2010" because Clerk's office employees allegedly told him between June and August 2008 that "no documents of any kind whatsoever had ever been filed" in 97mc3[4]. *Id.* at 7, ¶¶ 30-32. He then sets out his legal conclusions regarding the documents filed in 08mc15 and 97mc3, which are the same arguments he made in his motions filed in 08mc15. *See id.* at 8-9, ¶ 37.

The Court ignores Silver's legal conclusions and concludes that his factual allegations wholly fail to state a cognizable claim for relief against any Defendant. There is no state-law private cause of action for forgery of which the Court is aware. *See* NMSA 1978, § 30-16-10 (specifying the elements for the criminal offense of forgery); *Keyter v. 535 Members of 110th Cong.*, 277 Fed. App'x 825, 827 (10th Cir. 2008) ("The law is crystal clear: a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another.") (citation and internal quotation marks omitted).

As to his claims for fraud and intentional infliction of emotional distress, there are no allegations to support the personal, much less intentional, involvement of any Defendant in the alleged forgery, thus Silver's allegations are nothing more than "naked assertions devoid of further factual enhancement." *Iqbal*, 129 S. Ct. at 1949. *And see Williams v. Stewart*, 137 N.M. 420, 112 P.3d 281 (Ct. App. 205) (setting forth elements of fraud). Further, according to the Amended Complaint, the Defendants were not even aware of Silver's suspicions of "forgery" until six months *after* the November 14, 2007 Judgment Docket was obtained and a month *after* the writs of garnishment were sent out, so his own allegations defeat the suggestion that the Defendants had authorized anyone to forge a document months earlier.

---

[4] As Silver admits in his response to the motion to dismiss, at an August 13, 2008 hearing, I specifically informed Silver that the Clerk's office employees were mistaken about the file having been destroyed or no orders or judgments being in it, because I had the 97mc3 file in front of me that contained the orders and judgments and offered to make Silver a copy of it. Doc. 21 at 2.

As to his fraud, defamation and emotional-distress claims, there simply is no forgery, nor are there any false statements as a matter of law. The Court has again examined the original, certified copy of the valid 1996 Illinois foreign judgment, the October 21, 2004 Order reviving that judgment, and the copy of the November 14, 2007 Judgment Docket that the Court issued and kept in the 97mc3 file. These documents conclusively establish that Lincoln National was entitled to obtain the November 14, 2007 Judgment Docket transcript based on the 1996 Illinois judgment that had been revived. Despite the fact that it contains a typographical error, as a matter of law the November 14, 2007 Judgment Docket is based on a valid judgment and is the same document as the November 14, 2007 Judgment Docket that Lincoln National has properly filed in various counties around the state. *Zamora v. Clayborn Contracting Group, Inc.*, 47 P.3d 1056, 1064 (Cal. 2002); *United States v. Gary*, 420 F. Supp. 2d 470, 476 (E.D. Va. 2006). Thus there has never been a false statement or misrepresentation of fact because the court records themselves establish that Silver still owes Lincoln National on the 1996 Illinois judgment that has been registered and revived in this Court. As a matter of law, therefore, there also is no "forgery" and no causes of action for fraud, defamation, or intentional or negligent infliction of emotional distress exist against any Defendant. The Court will dismiss Silver's Amended Complaint.

**IV.    The motions to strike and motion for leave to amend.**

The Defendants request that the Court strike the second, third, and fourth amended complaints for failure to comply with FED. R. CIV. P. 15. *See* Docs. 20, 55. Silver does not argue that he had the authority to file the purported amended complaints. The only new allegation in the Second Amended Complaint is that some unidentified party also forged the Court's October 21, 2004 Order Reviving Judgment, and that the Defendants somehow also "knew" that this "fabrication" was used to support the writs of garnishment. *See* Doc. 11 at ¶¶ 36-47. The Third

7

Amended Complaint does not add any significant new factual allegations, but includes a civil Racketeer Influenced and Corrupt Organizations Act claim based on the Lincoln Defendants' alleged "pattern" of "forgeries" described in the first two amended complaints. *See* Doc. 12 at ¶¶ 78-80. In response, Silver impermissibly filed a Fourth Amended Complaint, *see* Doc. 40, then filed a motion for leave to file an "amended supplemental complaint" - which apparently is the Fourth Amended Complaint, *see* Doc. 43, and argued that the motion to strike should be denied because he has named Defendants' counsel as defendants in his Fourth Amended Complaint, *see* Doc. 44 at 2.

In the Fourth Amended Complaint, Silver seeks to add Lincoln National's attorneys as additional defendants and continues to insist that there are "no original" documents in the Court's records because they were "destroyed.[5]" Doc. 43 at 1. From this erroneous statement, he then speculates that the copies of the 2007 Judgment Docket *and* the October 21, 2004 Order reviving the 1996 Illinois judgment that have been stamped by various county clerks' offices at different times (and that are also in the 97mc3 or 08mc15 records as attachments to various documents) "have to be frauds, creations at the hands of" Lincoln National's counsel. Doc. 43 at 1. Silver insists that he must depose me (Judge Black) and clerk's office employees to prove that the files have been destroyed and that documents are fraudulent. Again, Silver's contentions are conclusively belied by the Court record. Copies of the October 21, 2004 Order and November 14, 2007 Judgment

---

[5] Silver bases his erroneous allegation that the 97mc3 file was "destroyed" on a clerk's office employee's erroneous assumption that the reason the employee could not find the file must be because miscellaneous files are destroyed after five years (which is true in most cases but not in this case), and on Lincoln National's counsels' earlier statements in other courts that writs of garnishment based on the 1996 Illinois judgment were issued in case number 08mc15 "apparently because the court inadvertently destroyed the original file," which they also assumed to be true because the 97mc3 file was misplaced for a period of time. *See* Doc. 43 at 3-4, 31; Doc. 12 at 7.

Docket that were originally issued, and that have no stamps from county clerks' offices, are in the hard-copy 97mc3 file, and the Court has asked the clerk's office to also scan these documents into the electronic record of the 08mc15 case as part of docket entry 2.

Silver has not included relevant additional allegations against any of the Lincoln National Defendants in the second, third, or fourth amended complaints or in his response to the motion to dismiss that would be responsive to the Defendants' motion to dismiss. Because Silver improperly filed the second, third, and fourth amended complaints without authority to do so, *see* FED. R. CIV. P. 15, the Court will strike them. And because Silver's motion to amend is based, as a matter of law, on erroneous facts or legal conclusions that are conclusively belied by the Court's records and no cause of action may be based on these erroneous statements, the Court will deny the motion to amend. It would be futile to allow Silver to attempt to amend his Complaint a fourth time.

## V.     Turley's motion to dismiss and the motions to disqualify.

Supporting his motion to dismiss with an affidavit, Turley contends that Silver's complaint against him must be dismissed because he was never properly served and because he does not have sufficient contacts with New Mexico for the Court to assert personal jurisdiction over him. Silver has not supplied sufficient evidence to dispute Turley's affidavit or to show proper service or personal jurisdiction. The Court rejects as frivolous Silver's contention that the motion to dismiss should be denied because Turley's counsel should be disqualified. Silver's motion to disqualify Turley's counsel principally contains nothing but Silver's trivial speculations and he has presented nothing to demonstrate that counsel violated rules of professional conduct or ethics. *See Cole v. Ruidoso Mun. Schools*, 43 F.3d 1373, 1383 (10th Cir. 1994) ("motions to disqualify [an opponent's counsel] are governed by the ethical rules announced by the national profession and considered in light of the public interest and the litigants' rights") (internal quotation marks omitted) (disapproved,

in part, on other grounds by *EEOC v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184 (10th Cir. 2000)).

Similarly, Silver makes a spurious claim that the law firm of Kirkland and Ellis should be disqualified based on his unsworn assertions and speculations that Jeffrey W. Gettleman – a Kirkland partner who is not involved in this matter – is a "former client of [Silver]'s investment banking firm" and thereby gained "extremely confidential and proprietary information" about Silver. Doc. 35 ¶¶ 1, 5. Gettleman has sworn that he was never Silver's "client;" that he has never had an attorney-client relationship with Silver; and that he possesses no confidential information related to Silver, his business, or this case. *See* Doc. 46, Ex. A ¶¶ 2, 6. Rather, Gettleman had several conversations with Silver about a potential business acquisition in 1994, at a time when Gettleman worked in the business sector and was not practicing law. *Id.* ¶ 3. The potential transaction never occurred, and neither money nor "confidential and proprietary information" was exchanged. *Id.* ¶¶ 3, 6. Gettleman has had no significant communications with Silver since he joined Kirkland in 2002 until *Silver* contacted *him* by email on May 6, 2011—three days before Silver filed this motion to disqualify. *Id.* ¶¶ 3, 5. Silver did not file a sworn affidavit to rebut any of Gettleman's statements. The Court will deny the motion to disqualify.

**IT IS ORDERED** that the Defendants' *Motion to Dismiss* [Doc. 9], *Request for Judicial Notice* [Doc. 10], *Motion to Strike the Plaintiff's Purported Second and Third Amended Complaints* [Doc. 20], *Motion to Strike Plaintiff's Purported Fourth Amended and Supplemental Complaint* [Doc. 55], and *Motion to Dismiss* [Doc. 14] are GRANTED;

**IT IS FURTHER ORDERED** that Silver's *Motion to Disqualify Defendant James S. Turley's Attorneys, Peifer, Hanson & Mullins, P.A.* [Doc. 18], *Motion to Disqualify Defendants'*

*Counsel of Record Kirkland & Ellis* [Doc. 35], and *Motion for Leave to File an Amended Supplemental Complaint* [Doc. 43] are DENIED;

**IT IS FURTHER ORDERED** that all other pending motions [Docs. 25, 27, 36, 53, and 54] are DENIED as MOOT; and

**IT IS FURTHER ORDERED** that Silver shall not file any further motions or documents in this case, including any motions for reconsideration, other than a notice of appeal. Failure to obey this limitation will likely result in sanctions, monetary and otherwise.

*/s/ Bruce D. Black* _____
**CHIEF UNITED STATES DISTRICT JUDGE**